UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WELLS FARGO BANK, N.A., | Case No. 2:15-CV-753 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| SFR INVESTMENTS POOL 1, LLC, et al., | |
| Defendant(s). | |

Presently before the court is defendant/counterclaimant SFR Investments Pool 1, LLC's ("SFR") motion for summary judgment (ECF No. 55),[1] plaintiff Wells Fargo Bank, N.A.'s ("Wells Fargo") motion for summary judgment (ECF No. 56), and defendant Sunrise Highlands Community Association's (the "HOA") countermotion for summary judgment (ECF No. 64). Responses and replies to these motions are on the record. (ECF Nos. 61–63, 67–69, 74, 76).

**I.     Introduction**

On May 8, 2008, Alfonso and Maria Razo bought the real property at 2678 Early Light Drive, Las Vegas, Nevada (the "property") for a sum of $385,000.  (ECF No. 56).  On September 23, 2010, the pair refinanced the property via Castle & Cooke Mortgage's ("C&C") $376,010 loan. (ECF Nos. 56, 56-4).  Consequently, the Razos provided a deed of trust as security for the loan, which was recorded on September 29, 2010.  (ECF No. 56-5).

C&C appointed Mortgage Electronic Registration Systems, Inc. ("MERS") as the note and deed of trust beneficiary and obtained mortgage insurance through the Secretary of Housing and Urban Development.  (*Id.*).  On September 21, 2011, MERS conveyed its interest in the deed of

---

[1] Defendant Alessi & Koenig, LLC filed a joinder to this motion, its corresponding reply, and the response to Wells Fargo's motion. (ECF Nos. 57, 65, 70).

**James C. Mahan**
**U.S. District Judge**

trust to plaintiff via a corporate assignment deed of trust. (ECF No. 56-6). On November 20, 2011, Wells Fargo recorded a substitution of trustee, appointing National Default Servicing Corporation as trustee of the deed of trust. (ECF No. 56-7).

A notice of delinquent assessment (lien) was recorded on March 20, 2012, by Alessi & Koenig ("A&K") on behalf of the HOA in the amount of $965.89. (ECF No. 55-1 at 133).

On November 16, 2012, A&K mailed to plaintiff and others, via United States Postal Service certified mail, a notice of trustee's sale, which was recorded on November 19, 2012. (ECF No. 55-1 at 162–65). That notice indicated that $3,025.11 was owed and explicitly warned that failure to satisfy the balance would result in the sale of the property at A&K's office on December 19, 2012. (ECF No. 56-10). That notice also referenced the record date and instrument number of the underlying HOA lien. (*Id.*).

At that sale, SFR purchased the property for $16,000, and the accompanying trustee's deed upon sale was recorded on December 20, 2012. (ECF No. 56-11).

Wells Fargo initiated the present action on April 23, 2015. (ECF No. 1). On April 30, 2015, plaintiff filed its amended complaint—the operative one at this time. (ECF No. 10).

Plaintiff's amended complaint asserts the following claims: (1) violation of the Fifth Amendment's takings clause against all defendants; (2) violation of the United States Constitution's supremacy clause against all defendants; (3) violation of the Fifth and Fourteenth Amendment due process clauses against all defendants; (4) wrongful foreclosure against all defendants; (5) violation of Nevada Revised Statute ("NRS") 116.1113 *et seq.* against the HOA and A&K; (6) intentional interference with contract against all defendants; and (7) quiet title against all defendants. (ECF No. 10).

SFR's answer to the amended complaint asserted its counter/cross-claims for quiet title and injunctive relief as to the property. (ECF No. 21). SFR's motion for summary judgment asks the court to hold that, *inter alia*, "the Association's foreclosure sale was commercially reasonable, SFR is the title holder of the Property, and that the Bank's deed of trust was extinguished." (ECF No. 55 at 20).

James C. Mahan
U.S. District Judge

- 2 -

The HOA's countermotion for summary judgment requests that the court "deny [Wells Fargo]'s request for summary judgment" and resolve plaintiff's claims in this case in favor of the HOA. (ECF No. 64 at 5). The court will sequentially consider the claims in this case.

## II.     Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**III.   Discussion**

   *a.   Takings clause*

Wells Fargo contends that NRS 116.3116 *et seq.* violates the Fifth Amendment takings clause. (ECF No. 56). The takings clause prohibits the state from taking private property for public use without just compensation. U.S. Const. amend. V. Wells Fargo's argument, however, has been rejected. *See, e.g.*, *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortg., a Div. of Wells Fargo Bank, N.A.*, 388 P.3d 970, 975 (Nev. 2017) ("[T]he extinguishment of a subordinate deed of trust through an HOA's nonjudicial foreclosure does not violate the Takings Clauses."). Accordingly, this claim cannot proceed.

   *b.   Supremacy clause*

Under the property clause of the United States Constitution, only "Congress shall have the power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States . . . ." U.S. Const. Art. IV, § 3, cl. 2. The supremacy clause provides that the "Constitution . . . shall be the supreme law of the land . . . ." U.S. Const. Art. VI, cl. 2. "State legislation must yield under the Supremacy Clause of the Constitution to the

**James C. Mahan**
**U.S. District Judge**

- 4 -

interests of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs." *Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir. 1979).

In *Rust*, the Ninth Circuit held that a city's foreclosure on property insured by the Federal National Mortgage Association was invalid under the supremacy clause.  The court reasoned that upholding the sale "would run the risk of substantially impairing the Government's participation in the home mortgage market and of defeating the purpose of the National Housing Act." *Id.*

On this basis, courts consistently apply federal law, ignoring conflicting state law, when determining rights related to federally owned and insured loans.  *United States v. Stadium Apartments, Inc.*, 425 F.2d 358, 362 (9th Cir. 1970) (holding that federal law applies to Federal Housing Administration ("FHA")-insured mortgages "to assure the protection of the federal program against loss, state law to the contrary notwithstanding"); *see also United States v. Victory Highway Vill., Inc.*, 662 F.2d 488, 497 (8th Cir. 1981) (citing Ninth Circuit case law) ("We note that federal law, not [state] law, governs the rights and liabilities of the parties in cases dealing with the remedies available upon default of a federally held or insured loan.").  Foreclosure on federal property is prohibited where it interferes with the statutory mission of a federal agency. *See United States v. Lewis Cnty.*, 175 F.3d 671, 678 (9th Cir. 1999) (holding that the state could not foreclose on federal Farm Service Agency property for non-payment of taxes).

Indeed, federal district courts in this circuit have set aside HOA foreclosure sales on property and supremacy clause grounds in cases involving federally insured loans. *Saticoy Bay LLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, No. 2:13-cv-1199-JCM-VCF, 2015 WL 1990076, at *1 (D. Nev. Apr. 30, 2015); *see also Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 982 (C.D. Cal. 2000) (voiding HOA's non-judicial foreclosure on HUD property, quieting title in HUD's favor based on property and supremacy clauses); *Yunis v. United States*, 118 F. Supp. 2d 1024, 1027, 1036 (C.D. Cal. 2000) (voiding HOA's non-judicial foreclosure sale of property purchased under veteran's association home loan guarantee program); *Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-

1  01845-GMN-GWF, 2014 WL 4798565, at *6 (D. Nev. Sept. 25, 2014) (holding that property and
2  supremacy clauses barred foreclosure sale where mortgage interest was federally insured).

3      The single-family mortgage insurance program allows FHA to insure private loans,
4  expanding the availability of mortgages to low-income individuals wishing to purchase homes.
5  *See Sky Meadow Ass'n*, 117 F. Supp. 2d at 980–81 (discussing program); *Wash. & Sandhill*
6  *Homeowners Ass'n*, 2014 WL 4798565, at *1 n.2 (same).  If a borrower under this program
7  defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance
8  claim.  24 C.F.R. 203.355.  HUD's property disposition program generates funds to finance the
9  program.  *See* 24 C.F.R. § 291.1.

10      However, the instant claims to quiet title are not directed at FHA.  (ECF Nos. 10, 21).
11  Despite Wells Fargo's arguments, this court finds that plaintiff does not have standing to assert
12  this claim under the supremacy and property clauses.  *See, e.g.*, *JPMorgan Chase Bank, N.A. v.*
13  *SFR Investments Pool 1, LLC*, 200 F. Supp. 3d 1141, 1162–64 (D. Nev. 2016); *Freedom Mortg.*
14  *Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1177 (D. Nev. 2015); *see also Bank of*
15  *America, N.A. v. Hollow de Oro Homeowners Association, et al.*, No. 2:16-CV-675-JCM-VCF,
16  2017 WL 936633, at *3 (D. Nev. Mar. 9, 2017).

17      Accordingly, this basis for the claim for quiet title is unfounded.

18      c.  *Due process*

19      Wells Fargo argues that it was deprived of due process because the statutory scheme
20  governing HOA assessment liens was unconstitutional and that plaintiff lacked actual notice.
21  (ECF No. 56).  SFR asserts that this is not correct; "the Bank was sent copies of the Notice of
22  Default and Notice of Sale."  (ECF No. 62 at 12); *see also* (ECF No. 55-1 at 142–46, 62–64)
23  (submitting "certified mail receipt[s]" addressed, *inter alia*, to Wells Fargo).  Relevantly, if
24  plaintiff received actual notice of the notice of default or notice of trustee's sale, analysis of the
25  Ninth Circuit's decision in *Bourne Valley Court Trust v. Wells Fargo Bank, NA*, 832 F.3d 1154,
26  1158 (9th Cir. 2016), would not be needed here.

27      Plaintiff responds that "though SFR states that Alessi mailed a copy of the Notice of Sale
28  to Wells Fargo, the evidence indicates that Wells Fargo did not receive a copy of that document."

James C. Mahan
U.S. District Judge

- 6 -

1  (ECF No. 61 at 3) (citing to Amber Ott's deposition describing Wells Fargo's document-imaging system).

In reply, SFR posits that "[w]hile the Bank may have alleged not seeing the notices mailed to their address, this does not mean that the notices were not sent and received by Wells Fargo. The notice of mail was sent certified as can be seen from the proofs of mailing." (ECF No. 69 at 2).

In fact, the deposition testimony excerpts provided to the court do not illustrate sufficient foundation as to Ms. Ott's competency to testify regarding the document-imaging system and how mail is received at Wells Fargo. *See* (ECF No. 61-1); *see also* Fed. R. Evid. 602; *Fraser*, 342 F.3d at 1036. Accordingly, this court finds that Wells Fargo had actual notice of the looming sale of the property because defendant has failed to properly rebut SFR's evidence that the notice of trustee's sale was sent, by certified mail, to plaintiff. (ECF No. 55-1 at 163–64).

Therefore, plaintiff has not suffered a deprivation of due process. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983) ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.").

        *d.  Wrongful foreclosure*

Upon review of the various filings and exhibits that have been submitted in this case, the court finds no evidence that the parties have completed the statutorily required mediation required by NRS 38.310.[2]

That statute provides, in relevant part:

> No civil action based upon a claim relating to [t]he interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property . . . or [t]he procedures used for increasing, decreasing or imposing additional assessments upon residential property, may be commenced in any court in this State unless the action has been submitted to mediation.

---

[2] Plaintiff's constitutional grounds for this claim have been addressed above. *See* (ECF No. 10).

**James C. Mahan**
**U.S. District Judge**

- 7 -

Nev. Rev. Stat. § 38.310(1).  Subsection (2) continues, mandating that a "court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1."  Nev. Rev. Stat. § 38.310(2).

Subsection (1) of NRS 38.330 states that "[u]nless otherwise provided by an agreement of the parties, mediation must be completed within 60 days after the filing of the written claim."  Nev. Rev. Stat. § 38.330(1).  However, while NRS 38.330(1) explains the procedure for mediation, NRS 38.310 is clear that no civil action may be commenced "unless the action has been submitted to mediation."  Nev. Rev. Stat. § 38.310.  Specifically, NRS 38.330(1) offers in relevant part:

> If the parties participate in mediation and an agreement is not obtained, any party may commence a civil action in the proper court concerning the claim that was submitted to mediation.  **Any complaint filed in such an action must contain a sworn statement indicating that the issues addressed in the complaint have been mediated** pursuant to the provisions of NRS 38.300 to 38.360, inclusive, but an agreement was not obtained.

Nev. Rev. Stat. § 38.330(1) (emphasis added).  Moreover, nothing in NRS 38.330 provides that the Nevada Real Estate Division's ("NRED") failure to appoint a mediator within 60 days constitutes exhaustion, nor does the statute place the burden on NRED to complete mediation within a specified period of time.

As discussed, there is no indication in this case that the NRED mediation has been completed.  Thus, unless NRED appoints a mediator or the parties agree on one, plaintiff's claims—those that are subject to NRS 38.310—are unexhausted under state law.[3]  This court now proceeds, applying the remaining claims to this standard.

"A wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself."  *McKnight Family, L.L.P.*, 310 P.3d at 559 (citing *Collins v. Union Fed. Sav. & Loan*, 662 P.2d 610, 623 (Nev. 1983)).  "The material issue in a wrongful foreclosure claim is whether 'the trustor was in default when the power of sale was exercised.'"  *Turbay v. Bank of Am., N.A.*, No. 2:12–CV–1367–JCM–PAL; 2013 WL 1145212, at *4 (quoting *Collins*, 662 P.2d at 623).  "Deciding a wrongful foreclosure claim against a homeowners' association involves interpreting ["CC&Rs"] applicable to residential property."  *McKnight Family, L.L.P.*, 310 P.3d

---

[3] The statute of limitations for any claim submitted to NRED for mediation is tolled until the conclusion of mediation.  *See* Nev. Rev. Stat. § 38.350.

at 559. "This type of interpretation falls under NRS 38.310." *Id.* More applicable here, NRS 38.310 also applies to laws "contain[ing] conditions and restrictions applicable to residential property." *Id.* at 558.

Here, it is clear that the court must consider, at least in part, the underlying CC&Rs when adjudicating this claim because it must evaluate, as a necessary precursor to evaluating some of plaintiff's asserted grounds for this claim, the obligation to pay HOA assessments. Therefore, this claim is dismissed as unexhausted. *McKnight Family, L.L.P.*, 310 P.3d at 559.

### e. NRS 116.1113

NRS 116.1113 states: "Every contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement." Notably, plaintiff alleges that "the HOA and Alessi wrongfully foreclosed upon the Property in violation of the Statute." (ECF No. 10 at 12). Therefore, this court would have to evaluate the applicable CC&Rs to determine the duties that could be basis for the claim. *See McKnight Family, L.L.P.*, 310 P.3d at 558. Accordingly, this claim is dismissed as unexhausted.

### f. Intentional interference with contract

Plaintiff alleges, *inter alia*, that "Wells Fargo had a valid contract with Borrowers as evidenced by the promissory note and Deed of Trust, which included as part of the benefit of the bargain a first priority secured interest in the Property." (ECF No. 10 at 12). As plaintiff's interest in the property involves the validity of the HOA foreclosure sale brought upon by delinquent HOA assessments, this court is precluded from addressing this claim without proof of exhaustion of NRED mediation. *See* Nev. Rev. Stat. § 38.310(1); *McKnight Family, L.L.P.*, 310 P.3d at 558; (ECF No. 10).

### g. Quiet title

A claim to quiet title is not a civil action under NRS 38.300(3), which states: "The term does not include an action in equity for injunctive relief in which there is an immediate threat of irreparable harm, or an action relating to the title to residential property." *See, e.g.*, *U.S. Bank, Nat. Ass'n v. NV Eagles, LLC*, No. 2:15-CV-00786-RCJ-PAL, 2015 WL 4475517, at *3 (D. Nev. July 21, 2015) (finding that a lender's claim seeking both quiet title and declaratory relief was

James C. Mahan
U.S. District Judge

- 9 -

exempt from the mediation requirement of NRS 38.310); *see also McKnight Family, L.L.P.*, 310 P.3d at 559.

Wells Fargo seeks declaratory relief to quiet title in its favor. (ECF No. 10). As such, plaintiff asks this court to exercise its authority in equity. *See Apache Survival Coal. v. United States*, 21 F.3d 895, 905 n.12 (9th Cir. 1994) (acknowledging that a declaratory judgment is a form of equitable relief). However, the court has found that plaintiff had actual notice of the trustee sale; therefore, equity instead bars plaintiff's requested relief.

"The application of the unclean hands doctrine raises primarily a question of fact." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). To preclude equitable relief, the party's inequitable conduct must be "unconscientious, unjust, or marked by the want of good faith" and sufficiently connected with the "subject-matter or transaction in litigation." *Las Vegas Fetish & Fantasy Halloween Ball, Inc.*, 182 P.3d at 766. (citing *Income Investors v. Shelton*, 101 P.2d 973, 974 (Wash. 1940)). Two factors must be considered when assessing if a party's conduct is sufficiently connected to the action: "(1) the egregiousness of the misconduct at issue, and (2) the seriousness of the harm caused by the misconduct." *Id.* Plaintiff's refusal to utilize any pre-foreclosure remedy to prevent the sale bars it from seeking equitable relief in setting aside the relevant foreclosure.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014) ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also 7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

Further, plaintiff created the problem by failing to pay the amount set forth in the recorded notice of trustee sale, which was $3,025.11. (ECF No. 55-1 at 162). Had plaintiff paid the amount

James C. Mahan
U.S. District Judge

- 10 -

set forth in the notice of trustee's sale ($3,025.11), the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1). Rather than tendering the $3,025.11 and then later seeking a refund of any difference, plaintiff instead makes no allegation of any payment of the requested amount. *See SFR Investments Pool 1*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund); (ECF No. 10); *see also* (ECF No. 64) ("The Lender, or its predecessor, dropped the ball, but the Lender is inexplicably attempting to hold the HOA accountable for its own mistakes . . . .").

After failing to use the legal remedies available to it to prevent the relevant property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a timely *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—plaintiff now seeks to benefit from its failure to follow the rules set forth in the statutes. *See generally* Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale); *cf. Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."). Accordingly, this court will deny Wells Fargo's motion on this claim and instead grant SFR's motion to quiet title in its favor. (ECF Nos. 55, 56).

### IV.     Conclusion

In sum, plaintiff's claims of wrongful foreclosure, violation of NRS 116.1113, and intentional interference with contract will be dismissed as unexhausted. Next, summary judgment will be granted for defendants as to the constitutional claims. Finally, SFR is entitled to a declaration of title quieted in its favor, and Wells Fargo's *lis pendens* on the property will be expunged.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 11 -

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff Wells Fargo's motion for summary judgment (ECF No. 56) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the HOA defendant's countermotion for summary judgment (ECF No. 64) be, and the same hereby is, GRANTED IN PART AND DENIED IN PART, consistent with the foregoing.

IT IS FURTHER ORDERED that defendant SFR's motion for summary judgment (ECF No. 55) be, and the same hereby is, GRANTED IN PART AND DENIED IN PART, consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiff's claims of wrongful foreclosure, violation of NRS 116.1113, and intentional interference with contract be, and the same hereby are, DISMISSED as unexhausted.

IT IS FURTHER ORDERED that plaintiff's *lis pendens* on the property be, and the same hereby is, EXPUNGED from the record.

The clerk shall enter judgment accordingly and close the case.

DATED March 17, 2017.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**